## Kelsor v. Commonwealth.

(Decided October 5, 1926.)

### Appeal from Boyd Circuit Court.

Criminal Law.—In prosecution for murder, admission of evidence of other offenses, involving injuries to others, held not prejudicial;

where defendant set up defense of insanity, consisting of mania for injuring others.

WAUGH & HOWERTON for appellant.

FRANK E. DAUGHERTY, Attorney General, JOHN F. COLD-IRON and WATT M. PRICHARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment convicting appellant of the murder of "Cordell" (Cardwell) Spicer, and fixing his punishment at life imprisonment.

The facts are these: The homicide occurred on Sunday afternoon, November 29, 1925, at the home of Sarah Kelsor, an aged colored woman, who lived in Avondale, a suburb of Ashland. On the Friday preceding the shooting appellant procured a young colored man to drive him to Avondale. The car stopped in front of the home of the deceased and appellant asked for his uncle, Milt Ewing, who was in the house. Ewing and Spicer came out of the house when appellant threw a large cinder at Ewing and attempted to throw another. Thereupon Spicer struck appellant several times with brass knucks and injured his head severely. Appellant then left the scene and had his wounds dressed by a physician. On the following Sunday morning appellant told Carrie Murphy that Spicer had struck him and that he was going to get even with Spicer and kill him. About three o'clock in the afternoon he went to Sarah Kelsor's house. He entered by the kitchen door and then went into the lower front room where Sarah Kelsor, Margaret McElroy, Tom Pruitt and Spicer were sitting by a small stove. Spicer was in a chair leaning against the wall by the front door and facing appellant as he entered. Pruitt gave appellant some money and asked him to buy some whiskey. Appellant left and directed a taxi driver to drive him to 25th street and Greenup avenue in Ashland. Requesting the driver to wait for him he entered the house and then returned. He then directed the driver to drive him back to Avondale. On reaching a filling station not far from the Kelsor home he left the taxi, and while paying the driver told him he was going out there to put a black s— of a b— to sleep. He then went to the home of Sarah Kelsor and again entered by the kitchen door. Passing Pearl Brown, who was working in the kitchen, and without

speaking to her, he entered the room where Spicer and the others were still sitting in practically the same position as when he left. Walking to where Pruitt was he handed him the whiskey which he had procured, and without uttering a word immediately shot Spicer in the breast. All those present except appellant testified that he and Spicer never spoke to each other, either on the first or last visit, and that Spicer had no weapon in his hand, made no remarks to or concerning appellant, and made no demonstration in any way to injure him. On the other hand, appellant testified that Spicer weighed about 180 pounds and had a bad reputation for fighting. Spicer struck him with brass knucks on the Friday preceding and at the time he did so he (the witness) was not doing anything. He had been in the habit of visiting Margaret McElroy and called at Sarah Kelsor's house for that purpose on the afternoon of the shooting. When he entered the room where Spicer was sitting Spicer took out his knife, commenced hitting it upon his leg and pecking it on the chair, and began talking about his big pistol. While there Tom Pruitt gave him some money to buy some whiskey. He left and stayed away until he thought Spicer had left. On his return about an hour later Spicer said, "Why is that God damn nigger back here again?" He then jumped back into the door and the others tried to get away. Spicer had brass knucks and he could not get away from Spicer. He then fired one shot and went out the door. There was also evidence that in the year 1920 appellant was thrown by a pony and dragged some distance. In 1921 he was adjudged insane by the Montgomery county court and sent to the asylum. His mania took the form of a desire to injure others. He improved while in the asylum, but was not well. He was then brought home by his parents, who kept him until the trouble came up with Spicer.

The only ground urged for reversal was the admission of evidence of other offenses wholly disconnected with the homicide. It appears that while Bob Kurtzey, a witness for appellant, was under cross-examination he was asked what was the matter with his head. He replied that he had gotten a lick from George Kelsor, Roger's brother, and that Roger was present at the time. He was also permitted to testify that later on Roger struck Lee Franklin with a rock. It is true that, with certain exceptions, evidence of other crimes not con-

nected with the crime charged is not admissible, but, after all, the question is, whether the admission of such evidence was prejudicial or not. The evidence of all the disinterested witnesses, and even of the woman whom appellant was regularly visiting, was to the effect that after declaring his purpose to kill the deceased he went to the home of Sarah Kelsor, where the deceased was; that neither on appellant's first visit, nor on the occasion of the homicide, did deceased speak to or about appellant, or make any demonstration of any kind to injure him; and that appellant without saying a word to the deceased shot him while he was sitting in a chair leaning against the wall. If this be true, then appellant's only defense was that of insanity. Though the evidence that he was insane at the time of the trial was far from satisfactory, the question was submitted to the jury by instructions that are not complained of. Not only so, but the claim of insanity was based on evidence that he had a mania for injuring others, and, as the fact that he had struck another or others with a rock tended rather to support this defense, we are constrained, on a careful consideration of the entire record, to hold that the admission of evidence to that effect was not prejudicial to appellant's substantial rights.

Judgment affirmed.